UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SUNG JIN SU,

           Plaintiff,

    v.

WORLD KUK SOOL ASSOCIATION INC, et al.,

           Defendants.

Case No.  23-cv-01570-JCS

**ORDER DENYING MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT, GRANTING IN PART MOTION TO DISMISS OR TRANSFER AND TRANSFERING CASE TO THE SOUTHERN DISTRICT OF TEXAS**

Re: Dkt. Nos. 28, 33

## I.      INTRODUCTION

This action was initially filed in the Superior Court of the State of California for the County of San Francisco on March 3, 2023.  In the original complaint, plaintiff Sung Jin Su named as defendants World Kuk Sool Association, Inc. ("Association") and WKSA, LLC ("WKSA") and Does 1-25. Defendants removed the action to this Court under 28 U.S.C. § 1441(b) on the basis of diversity jurisdiction and brought a motion to dismiss under Rules12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure or to transfer the action to the Southern District of Texas under 28 U.S.C. § 1404(a). Dkt. no. 11.  Upon completion of briefing on that motion, Su filed a First Amended Complaint, rendering Defendants' motion moot.

Defendants then filed a renewed motion addressing the FAC, again asserting that there is no personal jurisdiction over the Association and WKSA and that Su fails to state a claim under Rule 12(b)(6).  In the alternative, Defendants requested a transfer under 28 U.S.C. § 1404(a) to the Southern District of Texas.  Dkt. no. 28 (Motion to: (1) Dismiss the First Amended Complaint for Lack of Personal Jurisdiction [Fed. R. Civ. P. 12(b)(2)]; (2) Dismiss the First Amended Complaint for Failure to State a Claim [Fed. R. Civ. P. 12(b)(6)]; or, Alternatively, (3) Transfer the Action to

United States District Court
Northern District of California

1  the Southern District of Texas [28 U.S.C. § 1404]) ("Motion to Dismiss or Transfer").  That

2  motion is presently pending before the Court.

3       In addition, because Su stated in his opposition to the Motion to Dismiss or Transfer that

4  he sought to add a defendant (Gene Gause) who would destroy diversity, the Court ordered

5  briefing on that request. Thus, Su's Motion for Leave to File a Second Amended Complaint Under

6  Federal Rule of Civil Procedure 15(a)(2) and N.D. Cal. Civ. L.R. 7-1(A) ("Motion for Leave to

7  Amend") is also pending before the Court. The Court refers to these motions collectively as the

8  "Motions."

9       The Court finds that the Motions can be decided without oral argument and therefore

10  vacates the motion hearing set for August 25, 2023 under Civil Local Rule 7-1(b).  For the reasons

11  stated below, the Court DENIES Su's request to add Gause as an individual defendant and

12  transfers this case to the Southern District of Texas pursuant to 28 U.S.C. § 1404(a).[1]

13  ## II.    BACKGROUND

14       This case involves a bitter family dispute between father and son.  The core allegations in

15  the original complaint and that Su has continued to assert in some form in the First Amended

16  Complaint and the proposed Second Amended Complaint, are that Su and his family moved to

17  San Francisco from Korea in 1986 at the request of Defendants and that sometime after he

18  relocated Su was promised by his father, In Hyuk Suh, who is or was the director of the

19  Association and WKSA, that Su would be the next President and Director of Defendants'

20  businesses.  Complaint ¶¶ 13-14; First Amended Complaint ("FAC") ¶¶ 13-14; Proposed Second

21  Amended Complaint ("SAC") 19-20. According to Su, under this arrangement he was to be given

22  an ownership interest in all assets of the Association and WKSA, including real estate located in

23  Texas.  Complaint ¶ 19; FAC ¶ 16; SAC ¶ 23.  Su has not alleged that this agreement was in

24  writing and during the course of briefing on the Motions has implicitly conceded it was not.  *See,*

25  *e.g.,* dkt. no. 30  (Opposition to Motion to Dismiss or Transfer) at 14 (arguing that his breach of

26  contract claim is not barred by Statute of Frauds and characterizing his father's promise as an "oral

27

28  ---
[1] The parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).

2

contract").

Su alleges that he worked "tirelessly" for decades under the understanding that he would eventually take over leadership of the Association and WKSA.  Complaint ¶ 24-27; FAC ¶¶ 17-20; SAC ¶¶ 24-27.  However, in 2021 and 2022, Su alleges, he became of aware of improper conduct on the part of officers and/or agents of the Association and KWSA, including smuggling cash from the United Kingdom into the United States in connection with overseas tournaments, failing to conduct background checks on instructors, and promoting an instructor – Alex Suh (Su's brother) -- who was a sexual predator and covering up that instructor's misconduct, which included sexual assault.  Complaint ¶¶ 30-34; FAC ¶¶ 22-27; SAC ¶¶ 29-36. When Su brought these concerns to the attention of the Association and WKSA, his father told him he "could leave" the employment of the Association and WKSA and "'take any schools' with him that he 'thought' he could take."  Complaint ¶ 35; FAC ¶ 37; SAC ¶ 49. According to Su, "[t]his conversation was subsequently . . . memorialized by Defendants in a letter to all masters and school owners wherein Defendants state that Plaintiff may 'reach out' and 'invite them to join with him' and they are 'free to make their own decisions and whatever choice suits them best.'" FAC ¶ 37 & Ex. G. Su alleges that the letter "stated that the reason for termination was merely that Plaintiff 'has not made himself available for the various events hosted by the WKSA' and that Plaintiff 'continues to work against the best interests of the WKSA.'" FAC ¶ 40.

Su alleges that when he told his father he did not want to leave he was terminated.  *Id.*  Su alleges that his termination was in retaliation for expressing concerns about the improper conduct described above, but that the Association and KWSA "stated that the reason for termination was merely that Plaintiff 'has not made himself available for the various events hosted by the WKSA' and that Plaintiff 'continues to work against the best interests of the WKSA.'"  SAC ¶ 52 & Ex. K; *see also*  Complaint ¶¶ 38-39; FAC ¶ 65.  After his termination, Su alleges, the "officers or agents [of the Association and KWSA], publicly disparaged and ridiculed [Su] by stating that he was "disrespectful" and a "betrayer" among other things."  Complaint ¶ 21;  *see also*  FAC ¶ 41; SAC ¶ 55.

In all three versions of the complaint, Su asserted a defamation claim.  In the original

United States District Court
Northern District of California

3

1    Complaint and the FAC, which named only the Association and KWSA as defendants, Su pointed

2    to the following specific statements as the basis for his defamation claim: 1) Su's "way of doing

3    martial arts was wrong"; 2)  Su did not make himself available for WKSA events; and 3) Su was

4    "disrespectful," a "betrayer" and "did not bow" to In Hyuk Suh.  Complaint ¶¶ 42-44; FAC ¶ 69.

5    In addition, he alleged that Defendants used social media to "spread hatred, contempt and ridicule

6    of Plaintiff."  Complaint ¶ 46; FAC ¶ 71; SAC ¶ 89.  In the original Complaint, Su alleged that

7    this campaign was carried out by "Does" who were "authorized agents or representatives" of the

8    Association and KWSA.   Complaint ¶¶ 42-44, 46.  In the FAC, filed on May 5, 2023, Su again

9    attributed the disparaging statements on social media to "Does" but also attached an exhibit with

10   Facebook posts by Gene Gause that allegedly make disparaging comments about Su.  FAC ¶¶ 41,

11   69, 71 & Ex. H.

12        In the proposed SAC, which adds Gause as a defendant, Su expands upon his defamation

13   allegations, specifically pointing to statements made by Gause about him on social media,

14   including statements made after the original complaint was filed.  SAC ¶ 89.  In particular, he

15   alleges:

16        Defendant Gause has instituted an ongoing campaign of
         disparagement against Plaintiff on social media as well as telling
17       others in the Korean martial arts community. Broadcasting to all
         Korean martial artists on social media, Defendant Gause referred to
18       Plaintiff as a "Megolomaniac Man"; "unethical" "petty little bitch";
         "lowlife"; "immature"; "pissy little bitch"; "entitled" promulgating
19       "lies for stealing money from the unsuspecting and furthering his
         OWN egocentric agenda"; "Damn Liar and Con"; and more.
20

21   SAC ¶ 89; *see also* SAC ¶ 58 ("Defendant Gause also continued to disparage Plaintiff on social

22   media by calling him a 'LIAR'; 'con'; 'unethical'; 'petty little bitch'; trouble-maker; 'lowlife';

23   'Megolomaniac Man'; liar who 'steal[s] money from the unsuspecting and furthering his own

24   egocentric agenda' among other things.").  Su also attaches an exhibit to the SAC with fifteen

25   Facebook posts of varying lengths by Gause in support of this allegation.  SAC, Ex. O.

26        Su explains in the Motion for Leave to Amend that he did not name Gause in the FAC

27   because some of Gause's statements were made after the FAC was filed and because he "believed

28   and continues to believe that the individual proposed defendant, Mr. Gause, is an agent of

                                              4

Defendants with apparent authority[.]" Motion at 6;  *see also*  Su Decl. (dkt. no. 33-2) ¶ 4 ("I have endeavored to not name individuals in my complaint when I believe that such individuals are operating within a corporate structure; in this case, I believe that Mr. Gene H. Gause was and is an agent of the existing defendants. However, existing defendants deny this relationship and because Mr. Gause is causing me harm, I believe that Mr. Gause needs to be added in his individual capacity.").

Su has also added Gaya Won LLC ("Gaya") as a defendant  in his proposed SAC, explaining that he has learned that that entity "paid him in part for services." Motion at 5;  Su Decl. (dkt. no. 33-2) ¶ 3 ("After filing my First Amended Complaint, I found tax paperwork evidencing that Gaya Won LLC, one of the existing defendants' related entities, paid me, in part, for services rendered.").

## III.    ANALYSIS

### A.    Priority in Deciding Issues of Subject Matter Jurisdiction, Personal Jurisdiction, Venue and Adequacy of Plaintiff's Claims

The Supreme Court has recognized that "in most instances subject-matter jurisdiction will involve no arduous inquiry" and that "[i]n such cases, both expedition and sensitivity to state courts' coequal stature should impel the federal court to dispose of that issue first." *Ruhrgas AG v. Marathon Oil Co*., 526 U.S. 574, 587–88 (1999). Further, consideration of personal jurisdiction typically precedes venue because the former concerns "the court's power to exercise control over the parties" while venue "is primarily a matter of choosing a convenient forum." *Leroy v. Great Western United Corp*., 443 U.S. 173, 180 (1979) (citations omitted). Nonetheless, "when there is a sound prudential justification for doing so, . . . a court may reverse the normal order of considering personal jurisdiction and venue." *Id.*  In *Leroy*, for example, the Court found it was appropriate to decide a straightforward venue question that obviated the need to reach a novel constitutional question related to personal jurisdiction.

Here, the Motions raise issues of subject matter jurisdiction (whether Su should be permitted to add Gause as a defendant, which would destroy diversity jurisdiction and result in remand of the case to state court), personal jurisdiction (whether there is personal jurisdiction over

the defendants named in the operative complaint, the Association and KSWA) and venue (whether the case should be transferred to Texas under 28 U.S.C. § 1404(a), as well as challenges to Su's claims under Rule 12(b)(6).  In the interests of comity, the Court addresses first whether Su should be permitted to add Gause as a defendant. For the reasons set forth below, the Court denies Su's request to add Gause as a defendant.

Next, the Court addresses venue because it finds that the analysis on that question is relatively straightforward whereas Defendants' personal jurisdictional challenge raises novel constitutional questions.  Because the Court finds that this case should be transferred to the Southern District of Texas, where there is undisputedly personal jurisdiction over Association and KSWA, those challenges will be rendered moot.  The Court will leave the remaining questions, concerning whether Su may add Gaya as a defendant and the adequacy of the claims in the FAC under Rule 12(b)(6), to be decided by the transferee court.

**B.    Whether Su May Amend the Complaint to Add Gause**

**1.   Legal Standards Under 28 U.S.C. § 1447(e)**

The general standard governing a motion for leave to file an amended complaint is set forth in Rule 15(a) of the Federal Rules of Civil Procedure, providing that a party may amend its pleadings after a responsive pleading has been served, ". . . only by leave of the court or by written consent of the adverse party[,]" and further providing that such ". . . leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Courts determine the propriety of allowing amendment of a complaint by considering whether the party seeking to amend has acted in bad faith, whether amendment will cause undue delay and/or prejudice and whether amendment is futile.  *IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de C.V.,* 125 F. Supp. 2d 1008, 1011 (N.D. Cal. 2000). However, courts "scrutinize amendment more closely when the amendment will defeat diversity jurisdiction."  *Id.*  In that scenario, courts have developed specific factors under 28 U.S.C. § 1447(e) that should be considered.  *Id.*

Section 1447(e) provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e).  "Under § 1447,

United States District Court
Northern District of California

United States District Court
Northern District of California

1    whether to permit joinder of a party that will destroy diversity jurisdiction remains in the sound

2    discretion of the court." *IBC Aviation Servs., Inc.*, 125 F. Supp. 2d at 1011.  Courts consider the

3    following factors when deciding whether to allow amendment to add non-diverse defendants: "(1)

4    whether the party sought to be joined is needed for just adjudication and would be joined under

5    Federal Rule of Civil Procedure 19(a); (2) whether the statute of limitations would preclude an

6    original action against the new defendants in state court; (3) whether there has been unexplained

7    delay in requesting joinder; (4) whether joinder is intended solely to defeat federal jurisdiction; (5)

8    whether the claims against the new defendant appear valid; and (6) whether denial of joinder will

9    prejudice the plaintiff." *Id.*

10                **2.  Discussion**

11           There is no dispute that Gause is a California resident and therefore, that adding him as a

12   defendant will destroy diversity jurisdiction.  Defendants explicitly recognized in their brief that

13   adding Gause would destroy diversity jurisdiction.  Opposition (Dkt. no. 34) at 1 ("adding Mr.

14   Gause as a defendant would eliminate complete diversity and thereby destroy diversity

15   jurisdiction.").  Su did not address the jurisdictional implications of adding Gause as a defendant

16   in the Motion for Leave to Amend but in his Reply, he recognized that adding Gause would result

17   in loss of subject matter jurisdiction and argued that "the Court should allow Plaintiff to add Mr.

18   Gause as a defendant even if it means that the Court will lose subject matter jurisdiction."  Reply

19   (dkt. no. 37) at 11.[2]  Therefore, the Court finds that the factors that apply under 28 U.S.C. §

20   1447(e) govern the question of whether Su should be permitted to amend his complaint to add

21   Gause as a defendant.[3]

22   _____

23   [2] In his Proposed SAC, Su asserts that there is diversity jurisdiction – even though he alleges that
     both he and Gause are citizens of California – because there is diversity between Su and the

24   remaining defendants. SAC ¶¶ 11-15.  Su offers no explanation for this assertion in his briefs.  Nor
     does he cite any authority to support the proposition that diversity jurisdiction under 28 U.S.C. §

25   1332 exists where there is incomplete diversity among the parties.  The Court construes Su's
     silence in the Motion on this question, as well as the statements in his reply brief cited above, as

26   implicitly conceding that complete diversity is required under 28 U.S.C. § 1332. *Caterpillar Inc.
     v. Lewis*, 519 U.S. 61, 68 (1996) (holding that under § 1332(a) "complete diversity of citizenship"

27   is required, that is, each plaintiff must be a citizen of a different state than each defendant.).
     [3] As to Su's request to amend the complaint to add Gaya, it appears to be undisputed that this

28   entity is based in Texas and that its addition to the case will not destroy diversity.  Therefore, the
     more general (and somewhat less restrictive) standards of Rule 15(a) apply to that request.  As

a.   Joinder

Under Rule 19 of the Federal Rules of Civil Procedure, a required party is one whose absence would preclude the court from "according complete relief among existing parties" or would impede the parties' ability to protect their interests or subject any of the parties to the danger of inconsistent obligations. Fed.R.Civ.P. 19(a). "This standard is met when failure to join will lead to separate and redundant actions." *IBC Aviation Servs., Inc.*, 125 F. Supp. 2d at 1011 (citing *CP Nat'l. Corp. v. Bonneville Power Admin*., 928 F.2d 905, 912 (9th Cir.1991) (citation omitted). Although courts considering a motion to amend to add a non-diverse party look to Rule 19(a) to determine whether the party would be a necessary party under that rule, "amendment under § 1447(e) is a less restrictive standard than for joinder under Fed. R. Civ. Proc. 19." *Id.* at 1012 (citing *Trotman v. United Parcel Service*, 1996 WL 428333, *1 (N.D. Cal. 1996)). In that context, "[c]ourts disallow joinder of non-diverse defendants where those defendants are only tangentially related to the cause of action or would not prevent complete relief." *Id.* (citing *Red Buttons v. National Broadcasting Co*., 858 F. Supp. 1025, 1027 (C.D.Cal.1994)).

In *IBC*, the court found that this factor favored joinder of a key management employee of the existing corporate defendants who was alleged to have slandered the plaintiff and who was the "principal person responsible for the acts underlying [the plaintiff's] claim" against the corporate defendants. 125 F. Supp. 2d at 1012. Here, it is less clear that Gause is a necessary party who must be included in this case to accord Su complete relief. The SAC states that "Defendant Gause's role in the dispute is peripheral and does not constitute a substantial claim or controversy in the litigation." *Id.* Su further asserts in the SAC, "Defendant Gause's inclusion does not change the substantive nature of the dispute." *Id.* In contrast, the Association and KWSA are described in the proposed SAC as the "principal defendants." SAC ¶ 15. Because Su admits that Gause's role is tangential to the litigation and does not assert that he will be unable to obtain complete relief if Gause is not joined, this factor does not support allowing Gause to be added as a defendant. *See*

discussed above, however, the Court does not reach that question herein, instead denying the request to amend to add Gaya without prejudice to filing a renewed request to amend with respect to that entity in the transferee court.

United States District Court
Northern District of California

*Cruz v. Bank of New York Mellon*, No. 12-CV-00846-LHK, 2012 WL 2838957, at *4 (N.D. Cal. July 10, 2012) ("Courts will prevent joinder of non-diverse defendants where the proposed defendants are only tangentially related to the cause of action or would not prevent complete relief.") (internal quotation and citation omitted).

The Court also notes that there is not a significant chance of inconsistent outcomes because the claims against Gause supplement the claims against the other defendants and appear to be based mostly on conduct that occurred after this action was initiated. Such claims are not subject to claim preclusion and therefore, Su will be able to proceed against Gause in a separate action regardless of the outcome in this case. *See Los Angeles Branch NAACP v. Los Angeles Unified School District*, 750 F.2d 731, 739 (9th Cir. 1984) (observing that with respect to res judicata, "the scope of litigation is framed by the complaint at the time it is filed" and that "[t]he rule that a judgment is conclusive as to every matter that might have been litigated does not apply to new rights acquired pending the action which might have been, but which were not, required to be litigated.") (internal quotation and citation omitted).

### b. Statute of Limitations

Defendants point out that the statements by Gause that are the basis for Su's claims against him were made recently and thus, Su's claims will not be barred by any statute of limitations if the Court denies his request to add Gause to this case. In particular, Defendants contend that all of the statements by Gause listed in the proposed SAC occurred between March 12, 2023 and June 25, 2023 and Su does not dispute this. Dkt. no. 34 (Opposition) at 8. As the statute of limitations for defamation under California law is one year, *see* Cal. Code. Civ. Proc. § 340, Su will not be barred from asserting his claims against Gause in state court if the Court denies his request to add Gause as a defendant in this case. Therefore, the Court finds that this factor does not support permitting Su to add Gause as a defendant.

### c. Undue Delay

Defendants contend Su intentionally delayed adding Gause as a defendant, offering no explanation for failing to name him as a defendant in the FAC even though the attachments to the FAC show that Su was aware of the conduct of Gause that is the basis for his claims against him.

Opposition at 9.  This delay was "strategic maneuvering[,]" they contend, and therefore, this factor points towards denying Su's request to add Gause as a defendant.  The Court finds this factor to be neutral.

In determining whether there has been undue delay, courts consider whether the "moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006). As discussed above, Su's request to add Gause as an individual defendant is in response to the assertion made by Defendants in briefing on their motion to dismiss the FAC that Gause is not an employee, agent or authorized representative of the Association or WKSA.  That brief was filed on June 30, 2023.   The instant motion was filed approximately one month later. While Su might have anticipated that the Associate and WKSA would take this position and arguably should have named Gause as a defendant in the FAC, the Court nonetheless does not find that the delay was undue given that this case is still at the pleading stage. The Court also takes into consideration that much of the conduct by Gause that is the basis for Su's proposed claims against him occurred after Su filed the complaint initiating this action.  Therefore, the claims against Gause that Su seeks to add to the case could not have been included in the initial pleading even if they might have been asserted in the FAC.

### d.  Plaintiff's Intent

"[T]he motive of a plaintiff in seeking the joinder of an additional defendant is relevant to a trial court's decision to grant the plaintiff leave to amend his original complaint." *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1376 (9th Cir. 1980). Further, "a trial court should look with particular care at such motive in removal cases, when the presence of a new defendant will defeat the court's diversity jurisdiction and will require a remand to the state court." *Id.*  Here, the evidence in the record does not support imputing an improper motive to Su in connection with his request add Gause as a defendant. Rather, the request appears to have been motivated by Defendants' statements disavowing any agency relationship between Gause, on the one hand, and the Association and KWSA on the other.  Indeed, Su's briefs and the proposed SAC indicate that Su's counsel initially did not fully understand the implications of adding Gause with respect to

1    subject matter jurisdiction.  Therefore, the Court finds that this factor is also neutral.

2                    e.   Whether the Claims Against Gause Appear Valid

3           In the proposed SAC, Su asserts claims for defamation and intentional infliction of

4    emotional distress and defamation against Gause.  The Court finds that Su's claims against Gause

5    do not appear valid and therefore, this factor supports denying Su's request to add him as a

6    defendant.

7           "The tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d)

8    unprivileged, and that (e) has a natural tendency to injure or that causes special damage.'" *Taus v.*

9    *Loftus*, 40 Cal. 4th 683, 720 (2007) (quoting 5 Witkin, Summary of Cal. Law (10th ed. 2005)

10   Torts, § 529, p. 782, citing Civ. Code, §§ 45–46 and cases.) "A statement is defamatory when it

11   tends 'directly to injure [a person] in respect to [that person's] office, profession, trade or business,

12   either by imputing to [the person] general disqualification in those respects which the office or

13   other occupation peculiarly requires, or by imputing something with reference to [the person's]

14   office, profession, trade, or business that has a natural tendency to lessen its profits.'" *Issa v.*

15   *Applegate*, 31 Cal. App. 5th 689, 702 (2019) (citing *McGarry v. University of San Diego*, 154

16   Cal.App.4th 97, 112 (2007) (quoting Cal. Civ. Code, § 46, subd. 3.)).

17          "Though mere opinions are generally not actionable . . .  a statement of opinion that

18   implies a false assertion of fact is actionable. *Id.*  (citations omitted).  "The 'pertinent question' is

19   whether a 'reasonable fact finder' could conclude that the statements 'as a whole, or any of its

20   parts, directly made or sufficiently implied a false assertion of defamatory fact that tended to

21   injure' plaintiff's reputation."  *Id.*  at 703 (quoting *James v. San Jose Mercury News, Inc.*, 17

22   Cal.App.4th 1, 13(1993)).   Further, "[i]n defamation actions the First Amendment . . . requires

23   that the statement on which the claim is based must specifically refer to, or be "of and

24   concerning," the plaintiff in some way." *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1042

25   (1986). "Other district courts in the Ninth Circuit and California state courts have interpreted

26   *Blatty* to mean that the individual must be specifically referred [to] or be identifiable by clear

27   implication in defamation cases." *Yow v. Nat'l Enquirer, Inc.*, 550 F. Supp. 2d 1179, 1184 (E.D.

28   Cal. 2008) (citation omitted). To meet this requirement at the "pleading stage, a plaintiff must

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1    allege that 'the statement at issue either expressly mentions him or refers to him by reasonable

2    implication.'" *Total Call Internat. Inc. v. Peerless Ins. Co*., 181 Cal. App. 4th 161, 170 (2010)

3    (quoting *Blatty*, 42 Cal. 3d at 1046).

4         Gause's social media posts, attached as Exhibit O to the proposed SAC, do not specifically

5    refer to Su by name, raising the question of whether the statements refer to Su by "clear

6    implication" under *Blatty*. Su has supplied a declaration stating that although Gause's posts do not

7    mention him by name, they are impliedly about Su.  Dkt. no. 37-1 (Su Reply Decl.) ¶ 4.  He

8    further  notes that "Gause also knows that I created and exclusively teach the forms 'Bong 2' and

9    'Oon Hak 2' and Mr. Gause posted false statements mentioning those two forms."  *Id.*  The Court

10   will assume that Su has adequately alleged that Gause's statements are, by implication, about him

11   – or at least, that Su could meet this pleading requirement if he were permitted to amend his

12   proposed SAC.  However, the Court finds that his allegation fall far short with respect to alleging

13   Gause has made defamatory statements of *fact*.

14        "The sine qua non of recovery for defamation . . . is the existence of falsehood." *McGarry*

15   *v. Univ. of San Diego*, 154 Cal. App. 4th 97, 112 (2007) (quoting *Letter Carriers v. Austin*, 418

16   U.S. 264, 283 (1974)).   "Because the statement must contain a **provable** falsehood, courts

17   distinguish between statements of fact and statements of opinion for purposes of defamation

18   liability." *Id.* (emphasis in original).  The test "is not strictly whether the published statement is

19   fact or opinion, but is instead 'whether a reasonable fact finder could conclude the published

20   statement declares or implies a **provably** false assertion of fact.[,]" which is "a question of law for

21   the court to decide . . . , unless the statement is susceptible of both an innocent and a libelous

22   meaning, in which case the jury must decide how the statement was understood."  *Id.* (quoting

23   *Franklin v. Dynamic Details, Inc*., 116 Cal. App. 4th 375, 385 (2004)).

24        "California courts have developed a 'totality of the circumstances' test to determine

25   whether an alleged defamatory statement is one of fact or of opinion."  *Baker v. Los Angeles*

26   *Herald Exam'r*, 42 Cal. 3d 254, 260 (1986).  "In applying the totality of the circumstances test,

27   'editorial context is regarded by the courts as a powerful element in construing as opinion what

28   might otherwise be deemed fact.' " *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1401 (1999)

(quoting *Morningstar, Inc. v. Superior Court*, 23 Cal. App. 4th 676, 693 (1994)). "Part of the totality of the circumstances used in evaluating the language in question is whether the statements were made by participants in an adversarial setting." *Id.* The California Supreme Court has explained that this is because in this setting, "the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole," and thus, "language which generally might be considered as statements of fact may well assume the character of statements of opinion." *Gregory v. McDonnell Douglas Corp.*, 17 Cal.3d 596, 601 (1976).

> In *Gregory*, the court pointed to a series of examples to illustrate this point:
>
>> Thus, in *Greenbelt Pub. Assn. v. Bresler*, *supra*, 398 U.S. 6, for example, the United States Supreme Court acknowledged that use of the word "blackmail" could in some circumstances constitute libel; it held, however, that its use as descriptive of plaintiff's negotiating position in the context of the particular circumstances involved in that case was not libelous. (Pp. 13–14 [26 L.Ed.2d pp. 14-15].) Similarly, in *Letter Carriers v. Austin, supra*, 418 U.S. 264, it was held that the publication of Jack London's definition of "scab," containing the phrase "'traitor to his God, his country, his family and his class'" and other words suggesting that plaintiffs had "rotten principles" and "lacked character," did not constitute libel. "Such words were obviously used ... in a loose, figurative sense to demonstrate the union's strong disagreement with the views of those workers who oppose unionization. Expression of such an opinion, even in the most pejorative terms, is protected under federal labor law." (P. 284.) The high tribunal, reversing a state court injunction of union picketing, stated in *Cafeteria Union v. Angelos* (1943) 320 U.S. 293, that ". . . to use loose language or undefined slogans that are part of the conventional give-and-take in our economic and political controversies—like 'unfair' or 'fascist'—is not to falsify facts." (P. 295.).

17 Cal. 3d at 601-602.

Based on the allegations in Su's complaint and the attached documents, there can be no doubt that the posts by Gause, who is alleged to be a high master in the Kuk Sool organization, were made in an intensely adversarial setting. As Su has alleged, at the time the posts were made Su had been terminated and Defendants had sent out a letter to all masters and schools stating that Su is "working against" the Kuk Sool organization. *See* SAC ¶¶ 49-52 & Ex. K. Allegedly, this was followed by a letter to the masters and schools, sent just after Su filed the original complaint in this case, saying his complaint was "full of provably false claims." SAC ¶ 53 & Ex. L. And he

has alleged that Defendants, "through Hilda Roper, Kuk Sool Defendants' Compliance Officer, have been encouraging others to shun Plaintiff." *Id.* ¶ 59 & Ex. P ("example of a typical email from Hilda Roper"). According to Su, "if someone even 'likes' a Facebook post related to Plaintiff, Hilda Roper springs into action to let that person know that Plaintiff is 'working against' Kuk Sool Defendants[.]" *Id.*

Under these circumstances, the Court finds that the phrases and statements by Gause referenced in Su's proposed SAC, set forth in paragraphs 58 and 89, would be reasonably understood to be "classic rhetorical hyperbole which cannot reasonably [be] interpreted as stating actual facts." *Ferlauto*, 74 Cal. App. at 1404. Even statements implying that Su is a "con man" or a "liar" who ""steal[s] money from the unsuspecting and furthering his own egocentric agenda", which might be considered statements of fact under some circumstances, are simply too loose and figurative to be understood as anything but the opinion of a highly partisan individual who is seeking to persuade others of the correctness of his organization's positions in the context of an organizational dispute in which emotions are evidently running high. For these reasons, the Court finds that Su's claims against Gause appear to be insufficient as a matter of law.[4]

The Court further finds that to the extent Su's claim for intentional infliction of emotional distress is based on the same conduct as his defamation claim, that claim falls short as well. *See Silva v. Hearst Corp.*, No. CV97-4142 DDP(BQRX), 1997 WL 33798080, at *3 (C.D. Cal. Aug. 22, 1997) (citing *Selleck v. Globe Int'l*, 166 Cal. App. 3d 1123, 1136 (1985) ("When a complaint alleges a defamation claim, as well as other causes of action based on the same allegations, the additional claims should be dismissed as surplusage.").

Therefore, this factor strongly supports denial of Su's request for leave to amend to add Gause as a defendant in this action.

### f. Prejudice

Because the Court finds that Su's claims against Gause do not appear to have merit *and* he

---

[4] The Court does not reach Defendants' additional arguments that the defamation claim fails because Su is a public figure, requiring that he show the statements were made with actual malice; or that the statements are non-actionable because they fall under the common interest privilege.

can pursue those claims in state Court, the Court further finds that denial of Su's request to add

him as a defendant in this case will not result in prejudice to Su.  Therefore, this factor also

supports denial of Su's request.

> ### g.  Conclusion

Based on the factors discussed above, the Court DENIES Su's Motion for Leave to

Amend.

> ## C.     Whether this Case Should be Transferred to the Southern District of Texas

> ### 1.  Legal Standards

A case may be transferred "[f]or the convenience of parties and witnesses, in the interests

of justice," to "any other district or division where it might have been brought[.]" 28 U.S.C.

§1404(a).  There are two prongs to this analysis.  First, the transferee district must be a district

where the case could have originally been filed, meaning the court has jurisdiction and venue is

proper.  *Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, No. 03-3711 (MHP), 2003 WL

22387598, at *1 (N.D. Cal. Oct. 14, 2003).  The moving party bears the burden to prove this first

step.  *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

If the first prong is satisfied, the court decides in its discretion whether to grant or deny a

motion to transfer, balancing "the plaintiff's interest to freely choose a litigation forum against the

aggregate considerations of convenience of the defendants and witnesses and the interests of

justice." *Wireless Consumers*, 2003 WL 22387598, at *1; 28 U.S.C. § 1404(a).  The factors a

court may consider at the second step of the analysis include:

> (1) plaintiff's choice of forum; (2) convenience of the parties; (3) convenience of
> the witnesses; (4) ease of access to the evidence; (5) familiarity with of each forum
> with the applicable law; (6) feasibility of consolidation with other claims; (7) any
> local interest in the controversy; and (8) the relative court congestion and time of
> trial in each forum.

*Royal Queentex Enters. Inc. v. Sara Lee Corp.*, 2000 WL 246599 at *2 (N.D. Cal., March 1, 2000)

(citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)).

"Although great weight is generally accorded plaintiff's choice of forum . . . if the operative facts

have not occurred within the forum and the forum has no interest in the parties or subject matter,

[the plaintiff's] choice is entitled to only minimal consideration." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).

### 2. Whether this Case Could Have Originally Been Brought in the Southern District of Texas

The Court finds that this case could have been filed in the Southern District of Texas because the requirements for subject matter jurisdiction based on diversity under 28 U.S.C. § 1332 would be met and venue there would be proper. As to subject matter jurisdiction, it is undisputed that there is complete diversity because Su resides in California and the Association and WKSA are based in Texas.[5] The $75,000 amount in controversy requirement is also met as Su alleges in the FAC that his damages are at least $50,000,000. Venue in the Southern District of Texas is proper under 28 U.S.C. § 1391(b)(1) because both the Association and WKSA are based in Harris County, Texas, which is located in the Southern District of Texas. *See* FAC ¶¶ 2-3.

### 3. Whether Su's Choice of Forum is Outweighed by Other Factors

The starting point of the Court's analysis is determining the weight that should be given to Su's choice of forum. The Court finds based on the allegations in the FAC and the evidence presented by the parties that Su's choice of forum is not entitled to significant weight because almost all of the operative events giving rise to his claims occurred in Texas rather than California. In particular, Defendants have offered evidence that Su has not disputed showing that in 2008, Su moved to Texas to work for Defendants and that he worked for Defendants until March 10, 2022, when he was terminated, all the while living in Texas. Dkt. no. 28-2 (Suh Decl.) ¶¶ 13-15. Suh states in his declaration that Su continued to reside at the same primary residence throughout this period and at least until May 2023. *Id.* ¶ 15. Further, while Su's father previously owned a Kuk Sool Won school in San Francisco, Suh transferred ownership of that school to Su in 1991 and moved the Kuk Sool Won organization to Texas. *Id.* ¶ 5-7. Moreover, the claims in this case are

---

[5] In his Opposition, Su argues only that if the Court were to grant his request to add Gause as a defendant, there might not be personal jurisdiction over Gause in Texas and venue there might also be improper because Gause resides in California. Dkt. no. 30 (Opposition) at 18. Su does not mention that adding Gause would also destroy diversity as to the Texas District Court, just as it would have destroyed diversity in this action. As the Court has denied Su's request to add Gause as a defendant, however, these arguments have no bearing on its analysis of whether this case could have been brought in the Southern District of Texas.

unrelated to the San Francisco school that Su ran prior to his employment with Defendants.  Under these circumstances, the Court concludes that California has only a tangential connection to this case and no interest in having the controversy decided in California.  Therefore, the Court affords minimal weight to Su's choice of forum.

Next, the Court must consider the convenience of the parties and witnesses.  These factors, on balance, support transfer.  As to the relative convenience of litigating in Texas as opposed to California for Su and his father, Su contends appearing in court in Texas will impose a financial burden on him, dkt. no. 30-2 (Su Decl.) ¶ 14, while his father states that he is  84 years old and suffers from unspecified "preexisting health conditions."  Dkt. no. 28-2 (Suh Decl.) ¶ 3. Neither provides details as to the severity of the financial burden (Su) or health condition (Suh) and therefore these considerations appear to be of equal weight and cancel each other out.

On the other hand, the evidence in the record reflects that most of the witnesses who are likely to testify in the case are in Texas.  In particular, Su does not dispute that his attorney told Defendants' counsel before initiating this action that he intended to depose Association, WKSA, Gaya Won, LLC, T.N.S., LLC, any other affiliated entities of Association or WKSA, In-Hyuk Suh, Suk Hui Suh, Alex Suh, Richard Roper, Hilda Roper, Nick Reeve, John Ives, and Gene Gause."  Dkt. no. 28-7 (Jekel Decl.) ¶ 11.  Nor does he dispute that the only deponent on that list who is based in California is Gause; that while Nick Reeves and John Ives live in United Kingdom they regularly travel to Texas for events at Defendants' headquarters; and that the remaining deponent all reside in Texas.  *See id.* Finally, he does not dispute that other possible witnesses, including Alex Suh and Defendants' "owners, officers and employees" all reside in Texas.  *See* dkt. no. 28-2 (Suh Decl.) ¶ 18.

Su's only argument to the contrary is a vague statement in his Opposition and supporting declaration that while he has "not finalized any witness list" he "expect[s] that most witnesses [he] will call to support [his] claims are living outside of Texas."  Dkt. no. 30-2 (Su Decl.) ¶ 15. This statement is of little import as Su does not specifically identify any particular witness, much less any witness who resides in California and therefore is likely to be inconvenienced by a transfer of this case to the Southern District of Texas. Therefore, the Court concludes that most witnesses will

17

likely be based in Texas and that few witnesses (possibly only one) reside in California, making the Southern District of Texas a more convenient forum for witnesses in this case. (Even as to Gause, it questionable whether a transfer to the Southern District of Texas will be any less convenient as compared to this Court as Gause resides in Southern California rather than in this District.)

Su also does not dispute that a great deal of the relevant evidence is likely to be in Texas because Defendants keep their books and records there. Dkt. no. 28-2 (Suh Decl.) ¶ 19.

As to the familiarity of each forum with the applicable law, the Court finds that this factor is neutral as Su invokes both Texas and California law in the FAC. *See* FAC ¶ 5 ("Defendants allowed and/or condoned a continuing pattern of unlawful practices in violation of California and Texas law").[6] Federal district courts routinely apply the law of other fora and either this Court or the transferee court can apply whichever state's laws are found to apply. Likewise, the Court finds that the statistics cited by Defendants with respect to the relative case loads of the two districts do not strongly favor either side's position. The speed of adjudication of a case is influenced by a multitude of factors, many of which have little to do with the case loads and general statistics regarding average time to adjudicate a case in the two districts.

Finally, the Court finds that Texas has a significant interest in this case given that Su is suing two Texas entities for serious misconduct – both Su's allegedly retaliatory termination and the underlying conduct of which Su complained -- that occurred in Texas. Furthermore, Su contends he is entitled to an ownership interest in the two Texas companies and to real property located in Texas that is owned by third parties. *See* FAC ¶ 16 ("Defendants, through its director In Hyuk Suh, promised Plaintiff an ownership interest in all assets of Defendants, including real estate located at 20275 FM 2920 Tomball, Texas 77377 and real estate located at 37937 FM 1774, Magnolia, Texas 77355."); dkt. no. 28-7 (Jekel Decl.) ¶¶ 7-8 (reflecting that properties referenced in FAC are owned by third parties).

---

[6] Defendants argue in the Motion to Dismiss or Transfer that Texas law rather than California law governs some of Su's claims. These arguments are far from frivolous and Su does not meaningfully address them in his Opposition brief. The Court concludes, however, that this determination is more appropriately left to the transferee court to decide.

United States District Court
Northern District of California

Weighing all of the factors discussed above, the Court concludes that transfer of this action to the Southern District of Texas is in the interest of justice and outweighs Su's choice of forum.

## IV.    CONCLUSION

For the reasons stated above, the Court DENIES Su's Motion for Leave to Amend  and Grants the Motion to Dismiss or Transfer as to Defendants' request to transfer the case.   The Motion to Dismiss or Transfer is DENIED without prejudice in all other respects. This case therefore shall be transferred to the Southern District of Texas pursuant to 28 U.S.C. § 1404(a).

**IT IS SO ORDERED.**

Dated:  August 23, 2023

JOSEPH C. SPERO
United States Magistrate Judge

United States District Court
Northern District of California